**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

|  |  |
|---|---|
| DESARROLLADORA LA RIBERA, S. DE R.L. DE C.V., | ECF CASE |
| Plaintiff, | No. _____ |
| v. | **COMPLAINT** |
| STEVE ANDERSON, AMIT RAIZADA, and 5W PUBLIC RELATIONS LLC | <u>**JURY TRIAL DEMANDED**</u> |
| Defendants. |  |

Plaintiff, Desarrolladora La Ribera, S. de R.L. de C.V., ("DLR" or "Plaintiff"), by and through its attorneys, hereby files this complaint against defendants, STEVE ANDERSON, ("Anderson"), AMIT RAIZADA ("Raizada"), and 5W PUBLIC RELATIONS LLC ("5W PR" and together with Anderson and Raizada, "Defendants") and alleges the following, on information and belief, except as to Plaintiff's own acts, which are based on Plaintiff's knowledge, as follows:

<u>**NATURE OF ACTION**</u>

1.      Plaintiff brings this action to hold Defendants accountable for their campaign of defamatory and disparaging statements, which knowingly and intentionally harmed DLR.

2.      DLR is a luxury real estate developer developing a luxury Four Seasons-branded and Aman Resorts-branded residential development in Los Cabos, Mexico.  DLR's development in Los Cabos, known as Costa Palmas, is both renowned and successful, offering customers access to luxury properties and custom builds at a premier destination on the edge of the Sea of Cortez.[1] DLR has successfully closed on over 120 luxury properties at Costa Palmas ranging from vacant

---

[1] *See, e.g.*, Jim Dobson, *Four Seasons Private Retreats in Los Cabos Offer The Perfect Family Escape*, Forbes (Jan. 31, 2023), https://www.forbes.com/sites/jimdobson/2023/01/31/four-seasons-private-retreats-in-los-cabos-offer-the-perfect-family-escape/?sh=3a6dfb2b6865

lots to completed and fully furnished condos and single-family residences.  Over 33 custom homes have already been completed and delivered in Costa Palmas and a substantial number of additional homes are in various stages of active construction.

3.     Defendants are disgruntled purchasers and the public relations firm that they hired who falsely told both prospective purchasers and the media that Plaintiff is operating a "Ponzi scheme" and facing criminal charges.  These statements are demonstrably false and have had a negative impact on Plaintiff's real estate development business.

4.     Plaintiff now seeks to hold Defendants accountable, and to recover its actual damages incurred as a result of Defendants' malicious acts.  Plaintiff also seeks punitive and exemplary damages to prevent Defendants from engaging in such conduct in the future.

### THE PARTIES

5.     DLR is a Mexican corporation with its principal place of business in Baja California Sur, Mexico.

6.     Anderson is a natural person residing in Ross, California.

7.     Raizada is a natural person residing in Miami, Florida.

8.     5W PR is a limited liability company headquartered in New York, New York.  5W PR is registered to do business in New York and has a registered agent in New York.

9.     At all relevant times, 5W PR was and is the agent of Anderson and Raizada, and in doing the acts alleged herein, was acting within the course and scope of such agency.  Anderson and Raizada ratified and/or authorized the wrongful acts of 5W PR.

10.     In committing the wrongful acts alleged herein, the Defendants have pursued, or joined in the pursuit of, a common scheme, pattern, or course of conduct, and have acted in concert with and conspired with one another in furtherance of the improper acts and transactions that are the subject of this Complaint.

11.     Each of the Defendants aided, abetted, and rendered substantial assistance in the wrongs complained of herein, each Defendant acted with knowledge of the primary wrongdoing, substantially assisted in the accomplishment of that wrongdoing, and was aware of his or its overall contribution to and furtherance of the wrongdoing.  Thus, Defendants are jointly and severally liable for the wrongful conduct set forth herein because they aided and abetted each other and/or conspired to commit such wrongful conduct.

## JURISDICTION AND VENUE

12.     The Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332(a).  There is complete diversity of citizenship between Plaintiff and each Defendant, and the amount in controversy exceeds $75,000, exclusive of interests and costs.

13.     Complete diversity of citizenship exists.  Plaintiff is a citizen of Mexico.  Anderson is a citizen of California, Raizada is a citizen of Florida, and, as a limited liability company, 5W PR shares the citizenship of its members for the purposes of diversity jurisdiction.   Upon information and belief, all of 5W PR's members are citizens of New York.  *See* Complaint, *5W Public Relations, LLC v. Benoit, et al.*, (S.D.N.Y. 2005) Case No. 05-cv-3463.

14.     This Court has personal jurisdiction over Defendants.  5W PR's principal place of business is in New York.  Anderson and Raizada availed themselves of this forum by contracting with 5W PR to engage in the campaign to defame DLR.  That campaign, based out of 5W PR's New York office, where 5W PR worked as the agent of Anderson and Raizada, involved causing the publication of defamatory articles by New York media outlets. Accordingly, many of the wrongs complained of occurred in New York.

15.     Venue is proper in this Court pursuant 28 U.S.C. § 1391(b)(2) because a substantial part of the events giving rise to the claims herein occurred in this Judicial District.

**FACTS**

I.    **Anderson Is A Disgruntled Purchaser**

16.     DLR is developing a Four Seasons-branded and Aman Resorts-branded, luxury private residential development known as Costa Palmas located in La Ribera, Baja California Sur, Mexico in connection with its American affiliate Martell Capital Group LLC (d/b/a "Irongate LLC" and "Irongate").  Costa Palmas offers potential buyers the opportunity to purchase Four Seasons-branded and Aman-branded private luxury residences and villas.

17.     On April 19, 2018, Anderson, acting through his company, GS 1975 LLC, signed a purchase and sale agreement with DLR for the purchase of a to-be-constructed, furnished house known as Beachfront Casita 1 ("BFC-1") within the Costa Palmas development ("PSA").

18.     The PSA established an estimated substantial completion date for BFC-1 of June 9, 2019.  Due to unforeseeable obstacles including a dispute with the initial general contractor, various construction delays, and the Covid-19 global pandemic, the Substantial Completion of BFC-1 was delayed.

19.     Anderson was consistently apprised of construction progress and given the opportunity to terminate his PSA and receive a return of his initial deposits on account of the delay, but he instead elected to continue with the purchase of BFC-1.

20.     On September 6, 2022, DLR sent a notice of substantial completion to Anderson ("September Substantial Completion Notice").  Pursuant to the PSA, this September Substantial Completion Notice triggered Anderson's obligation to fund the fourth deposit in the amount of $1,575,000 ("Fourth Deposit") and to conduct his punch list inspection of BFC-1 within fifteen (15) business days from the receipt of the September Substantial Completion Notice ("September Punch List Inspection").

21.     Though he had been advised in advance that there would be ongoing work during

his September Punch List Inspection and that BFC-1's condition would reflect that ongoing work, Anderson nevertheless posted a TikTok video of his September Punch List Inspection, casting DLR, Costa Palmas, and Irongate in a disparaging light.  Following the September Punch List Inspection, DLR retracted the September Substantial Completion Notice and offered to return the Fourth Deposit to Anderson until the re-issuance of a new substantial completion notice.  Anderson did not respond to DLR's offer to return the Fourth Deposit.  Despite DLR having the right under the PSA to have the Fourth Deposit immediately funded to DLR upon receipt, DLR elected to escrow the Fourth Deposit where it remained until May 2023.

22.     Following the September Punch List Inspection, Anderson commenced a series of civil and criminal complaints in Mexico against DLR, its affiliates, and its officers, including a procedurally deficient arbitration instituted in Mexico pursuant to the PSA.

23.     On March 17, 2023, Anderson, through GS 1975 LLC, filed a lawsuit against Irongate; Jason Grosfeld, the Chief Executive Officer of Irongate and legal representative of DLR; Michael Radovan, Irongate's Director of Marketing; Martell Capital Group LLC; JG Martell Group LLC; Costa Palmas Beach and Yacht Club (US) LLC; and Does 1 through 10 ("Anderson's California Lawsuit").  On May 3, 2023, GS 1975 LLC filed a First Amended Complaint alleging fraudulent misrepresentation and concealment; negligent misrepresentation; breach of contract; breach of covenant of good faith and fair dealing; intentional interference with contractual relations; and violation of California Business and Professional Code §17200.

24.     Due to the ongoing Mexican arbitration, on July 19, 2023, Irongate obtained a stay of Anderson's California Lawsuit and all matters were compelled to the Mexican arbitration proceedings.

25.     On March 21, 2023, DLR issued a new substantial completion notice ("March Substantial Completion Notice") for BFC-1 to Anderson which established a closing date of May

5, 2023 ("May Closing Date").  This March Substantial Completion Notice triggered Anderson's requirement to conduct and complete his punch list inspection of BFC-1 within fifteen (15) business days from the receipt of the March Substantial Completion Notice ("March Punch List Inspection") and it also triggered Anderson's payment of his fifth and final deposit due on May 5, 2023 ("Final Deposit").

26.     During the week of April 10, Anderson completed his March Punch List Inspection, which resulted in a list of allegedly deficient and/or imperfect items to be addressed by DLR ("April Punch List Items").  Many of the "deficiencies" listed were redundant, items Anderson was not entitled to under the PSA, or not deficiencies at all.  On May 4, 2023, DLR responded to each of the April Punch List Items.

27.     On May 5, 2023, Anderson failed to make his Final Deposit, which resulted in DLR sending Anderson a default notice on May 8, 2023 ("Default Notice").

28.     On May 18, 2023, Anderson deposited the Final Deposit into escrow—thirteen (13) days after it was due—but he refused to take any of the additional steps required to consummate the closing of BFC-1 as set forth in the PSA, including, but not limited to, forming the required Mexican trust and obtaining closing certificates.

29.     As a result of Anderson's continued refusal to comply with his closing obligations under the PSA, DLR terminated the PSA on May 23, 2023.  DLR retained previous deposits in the amount of approximately $6,800,000 as liquidated damages as expressly allowed under the PSA and instructed the escrow agent to return the Final Deposit to Anderson.

30.     On August 2, 2023, Anderson filed a new baseless criminal complaint in Baja California Sur, Mexico against DLR as well as Irongate, Grosfeld, another DLR affiliate, Adminstradora y Constructora Costa Palmas FS S. de R.L. de C.V., and certain other current and former employees of Irongate including Radovan, Thomas Won, David Waller, Charles Smith,

Stephanie Cote, Sarah Evans, Gonzalo Sainz, Tom Rubel, and Will Bennett alleging criminal fraud. The Baja California Sur prosecutor has not opened an investigation nor have formal charges been filed by the prosecutor against Irongate or any of its employees.

31. Not only has the prosecutor declined to open an investigation or file formal charges against DLR, its affiliate, or any of its employees, but the prosecutor has formally declined to investigate Irongate, Grosfeld, Adminstradora y Constructora Costa Palmas FS S. de R.L. de C.V., Radovan, Won, Waller, Smith, Evans, Sainz, Rubel, and Bennett.

## II.     Raizada Is Also A Disgruntled Purchaser

32. On April 2, 2020, Raizada, acting through his company, TRG CP, LLC ("TRG"), signed a construction agreement with a DLR affiliate, Administradora De Desarrollos Costa Palmas, S.A. De C.V. for the construction of a custom single-family residence on a "cost-plus" basis on a lot Raizada purchased from DLR.

33. As many construction projects do—particularly during the COVID-19 pandemic when the construction of Raizada's unit was taking place—the project faced some delays and budget increases.

34. Unhappy with the disclosed and predictable cost increases, TRG and Raizada began refusing to approve updated construction budgets, causing further delays to the construction.

35. On July 7, 2022, Raizada, again acting through his company TRG, signed an Estoppel Certificate affirming, amongst other things, that TRG elected not to convert the Construction Agreement into a fixed price contract.

36. On January 17, 2023, dissatisfied with the terms of the Construction Agreement and Estoppel Certificate, Raizada, through TRG, filed suit against DLR's U.S. Affiliate Irongate; David Waller, Irongate's Managing Direct of Development; Mitch Laufer, Irongate's Director of Legal; Costa Palmas Beach and Yacht Club (US) LLC; and Does 1 through 10 ("Raizada's

California Lawsuit"). On February 1, 2023, TRG CP, LLC filed a First Amended Complaint alleging intentional fraud; promissory fraud; fraudulent concealment; constructive fraud; extortion; attempted extortion; tortious interference with contract; breach of contract; breach of covenant of good faith and fair dealing; and civil conspiracy.

37.     That lawsuit remains ongoing.  However, a motion to compel arbitration is pending.

### III.    Defendants Cause the Publication of False Information About DLR

38.     Not content with letting the legal process run its course, Anderson and Raizada contracted with 5W PR in New York to engage in a public relations campaign defaming DLR.

39.     5W PR, on behalf of Anderson and Raizada, provided news outlets false and defamatory statements regarding DLR and its affiliates and has connected Anderson and Raizada with news outlets so that they could provide false and defamatory information regarding DLR and its affiliates.

40.     Through their joint efforts, Defendants caused to be published multiple articles containing numerous defamatory statements of fact about DLR as well as its officers and affiliates (collectively referred to herein as the "Publications").

### A.    Publication of article, "Is Jason Grosfeld's Costa Palmas Resort the New Madoff Scheme?" on GritDaily.com

41.     GritDaily is an online news platform headquartered in New York, New York.

42.     On or about August 23, 2023, Defendants caused to be published an article on GritDaily.com titled, "Is Jason Grosfeld's Costa Palmas Resort the New Madoff Scheme?" by Jordan French, containing numerous defamatory statements of fact about DLR.  This story contains false and misleading statements that were purposefully designed to leave the impression that DLR is operating a Ponzi scheme and is facing criminal charges.  Specifically, the article falsely claims:

| | |
|---|---|
| (a) | *"Some homeowners in Costa Palmas, however, accuse Irongate of being a present-day Bernie Madoff, using the millions of dollars that it receives for luxury homes in a loosely structured Ponzi scheme to take or divert money from home buyers for Irongate's own personal profit."* |
| (b) | *"... [C]riminal legal proceedings have been brought or are being initiated against Irongate and its Mexican subsidiaries in Mexico, for fraud, racketeering, extortion, conspiracy and other wrongful conduct. Investigations by various Mexican and United States law enforcement agencies and other authorities may also be underway."* |
| (c) | *"Steve Anderson, a representative for GS 1975 LLC, ... also stated that GS 1975 LLC is working with prosecutors in Mexico to bring criminal charges against Irongate, Mr. Grosfeld, ..."* |

43.     Third-parties would reasonably understand these statements to concern DLR. Grosfeld is the legal representative of DLR.  DLR is the developer of Costa Palmas, in other words DLR is functionally "Jason Grosfeld's Costa Palmas Resort."  And DLR is also Irongate's "Mexican subsidiar[y] in Mexico."  Statements regarding Grosfeld or Irongate's activities in Costa Palmas are statements about DLR.

44.     All of these claims are false and misleading at least for the following reasons that were known or recklessly disregarded by Defendants in causing this article to be published.  There is no basis for Defendants' assertion that DLR is operating a Ponzi scheme.  Indeed, the PSA expressly gives DLR the right to use deposits for other development costs.  And DLR has successfully sold and closed on more than 120 properties at Costa Palmas including vacant lots and fully furnished condos and single-family residences.  33 homes have been completed and delivered in the Costa Palmas development and a substantial number of additional homes are in various stages of active construction.  There is also no support for the claim that criminal legal proceedings have been brought against DLR, that authorities are investigating DLR or its affiliates, or that GS 1975 LLC is working with prosecutors.  No criminal legal proceedings have been brought against DLR or its affiliates.  No authorities are investigating DLR or its affiliates.  And to claim that GS 1975 is "working with prosecutors" is based entirely on GS 1975 voluntarily filing a baseless criminal complaint against DLR in Mexico.  That Anderson has filed a baseless

criminal complaint not acted upon by Mexican authorities does not equate to criminal legal proceedings being brought or initiated against DLR and its affiliates. No criminal charges have been brought and there is no indication that GS 1975 is "working with prosecutors" as Anderson has claimed.

**B.** **Publication of article, "*Is Jason Grosfeld's Costa Palmas Resort the Newest Ponzi Scheme*?" on Medium.com**

45.     On or about September 8, 2023, Defendants caused to be published an article on Medium.com titled, "Is Jason Grosfeld's Costa Palmas Resort the Newest Ponzi Scheme?" by Mike Austin, containing numerous defamatory statements of fact about DLR. This story contains false and misleading statements that were purposefully designed to leave the impression that DLR is a Ponzi scheme and facing criminal charges. Specifically, the article falsely claims:

| | |
|---|---|
| (a) | *"Sources claim… criminal legal actions have been brought against Iron Gate and its Mexican subsidiaries in Mexico for fraud, racketeering, extortion, conspiracy, and other wrongdoing or are currently being brought against Iron Gate and some of its representatives."* |
| (b) | *"Numerous law enforcement agencies in Mexico and the US, as well as additional authorities, may be conducting investigations."* |
| (c) | *"Additionally, we've been told that both Mexican and American federal officials are looking at this issue."* |

46.     Third-parties would reasonably understand these statements to concern DLR. As previously discussed, Grosfeld is the legal representative of DLR, DLR is the developer of "Jason Grosfeld's Costa Palmas Resort," and is Irongate's "Mexican subsidiar[y] in Mexico." Reference to Irongate's activities in Costa Palmas is reference to DLR.

47.     All of these claims are false and misleading for at least the following reasons that were known, or at best recklessly disregarded by Defendants in causing this article to be published. As previously discussed, there is no support for the claim that criminal legal actions have been brought against DLR, that authorities are investigating DLR, or that authorities are "looking at this

issue."   No criminal legal proceedings have been brought against DLR.   No authorities are investigating DLR.

> **C.   5W PR Continues to Sow the Internet With Similar False Statements**

48.   5W PR has continued the defamatory campaign against DLR.   Defendants have caused a number of additional articles and profiles to be published, including:

> A.   "IronGate CEO Jason Grosfeld Facing Legal Action" by Michael Fernandez, TheDailyScanner.com, published on August 28, 2023.
>
> B.   "The Latest Ponzi Scheme of Jason Grosfeld" by Mike Austin, Latestnewz.hashnode.dev, published on November 21, 2023.
>
> C.   "Costa Palmas—Taking From The Rich And Giving to Jason Grosfeld," Bust.com, published on November 9, 2023.
>
> D.   "Jason Grosfeld Costa Palmas With Latest Ponzi Scheme in 2023," Shops4Now.com, published on December 12, 2023.
>
> E.   "Jason Grosfeld's Irongate, Costa Palmas: Fraud and Donald Trump Ties," 99Consumer.com, published August 31, 2023.
>
> F.   "The Newest Ponzi Scheme by Jason Grosfeld," Muhammad Rizwan, LinkedIn.com, published September 16, 2023.

49.   These articles falsely convey, amongst other things, that DLR is a "Ponzi scheme," and that Mexican and American Federal Officials are investigating Costa Palmas.

50.   The article published on Bust.com, further reveals Raizada's involvement in the defamatory campaign as that article credits Raizada as stating—falsely—that he is cooperating in criminal investigations involving Irongate, Grosfeld, and Costa Palmas.

51.   5W PR, Raizada, and Anderson have attempted to cause further articles containing false statements about DLR to be published as recently as December 18, 2023.

52.     On December 18, 5W PR sent an email from its New York Office to a luxury travel writer falsely stating that DLR's Costa Palmas resort is a "Ponzi scheme" and attempting to connect the writer with Anderson and Raizada.

## IV.   Publications Caused by the Defendants Interfere with Plaintiff's Future Economic Relations

53.     Costa Palmas is a 1,000-acre resort community and, in its first phase alone, it is projected to have more than 350 luxury residences once completed.  As Costa Palmas' developer, DLR had economic relationships with multiple customers who expressed an interest in purchasing a residence at Costa Palmas and DLR and its affiliates continue to pursue prospective customers to purchase the remaining inventory of residences available at Costa Palmas.

54.     The Publications caused by Defendants have interfered, and continue to interfere, with DLR's economic relationships with customers—the scope of which is yet unknown.

55.     For example, a customer that was in discussions with DLR and its affiliates to purchase a Costa Palmas residence in the amount of Twelve Million Five Hundred Thousand U.S. Dollars ($12,500,000.00 USD) expressed concerns to DLR after reading one of the Publications. Unambiguously, this customer stated that the article caused him to question DLR's character and if he should proceed with his purchase of a residence at Costa Palmas.  He specifically mentioned the article's description of how DLR was a Ponzi scheme and DLR's extortionary practices.  And he further expressed discomfort with how the article described DLR's aggressive business practices.  This Customer then expressed that he was considering purchasing a residence at other developments in Cabo San Lucas that did not have DLR's negative publicity.

56.     As a direct and proximate result of the conduct of Defendants described above, Plaintiff has been substantially harmed and damaged in an amount that is yet to be determined, including through lost business opportunities.

57.     The Publications referred to DLR by the name of its development project and reference to its affiliate, were made concerning Plaintiff, and were so understood by those who read the Publications to be about Plaintiff.

58.     The audience for these false statements of fact reasonably understood them to be about Plaintiff because all Publications specifically concerned Plaintiff.

59.     All of these claims are false, untrue, and misleading for the reasons described herein.

60.     Defendants published or caused the publication of these false and defamatory statements concerning DLR without justification.

61.     Defendants caused these Publications to be disseminated containing numerous defamatory statements of fact about Plaintiff.  Defendants' defamatory statements include the false statements listed in paragraphs 41 and 44 above, and they cast Plaintiff and its business practices in a disparaging light.

62.     The Publications are defamatory on their face. They contend Plaintiff committed serious crimes; injure Plaintiff's business; subject Plaintiff to hatred, distrust, ridicule, contempt, and disgrace; and call into question Plaintiff's basic integrity.

63.     The Publications were seen on or about the dates set forth above and they continue to be seen and read by readers around the world.

64.     The publication of these false and defamatory statements concerning Plaintiff was not privileged.

65.     Defendants acted with actual malice in making the statements. At the time the statements were made, Defendants knew they were false or acted with reckless disregard for truth or falsity.

66.     Defendants also acted with common law malice in making the statements.

Defendants' motive in publishing the statements was to injure Plaintiff, Defendants harbor spite, ill will, and animus toward Plaintiff, and Defendants have evil and sinister motivations in publicizing the statements above.

67.     As a result of Defendants' defamatory conduct, Plaintiff has suffered damages in the form of harm to its reputation.  Including damages of the type that are a fair and natural consequence of Defendants' tortious conduct; specifically, humiliation, embarrassment, and ostracism, and the deprivation of professional opportunities.

68.     Because Defendants acted with malice in making their false statements about Plaintiff, this Court should award punitive damages.

## FIRST CAUSE OF ACTION

### Tortious Interference with Prospective Business Advantage

### Against All Defendants

69.     Plaintiff refers to Paragraphs 1 through 68 above and incorporates the same herein by this reference as though set forth in full.

70.     An economic relationship existed between Plaintiff and multiple customers ("Customers") who indicated they desired to purchase properties at Costa Palmas.

71.     The economic relationship between Plaintiff and Customers carried a probability of an economic benefit to Plaintiff in that Plaintiff would receive a financial benefit from selling the Costa Palmas properties to Customers.

72.     Defendants had knowledge of the economic relationship between Plaintiff and Customers.  Anderson and Raizada were themselves Customers.  Defendants know DLR is a multi-unit project and that DLR is currently developing and seeking to develop additional units for additional Customers.

73.     Defendants intentionally spread false information to Customers, including claiming

that DLR was under criminal investigation and claiming that DLR was a Ponzi scheme. Defendants knew that interference with the relationship between DLR and Customers was certain or substantially certain to occur as a result of Defendants' wrongful conduct because Defendants had previously attempted to purchase property at Costa Palmas and knew Plaintiff's reputation for constructing luxury facilities.

74. Actual interference with the relationship between Plaintiff and Customers occurred in that Customers who indicated a strong interest in purchasing properties declined to move forward with those transactions.

75. As a result of Defendants' interference, Plaintiff has suffered economic harm in that Customers have declined to move forward with purchasing properties at Costa Palmas, which has resulted in the loss of millions of dollars.

76. The damages flow directly from and are the natural and probable consequence of Defendants' wrongful conduct.

77. Plaintiff is entitled to punitive damages as a result of Defendants' misconduct. Defendants' misconduct evinces such a high degree of moral culpability as to warrant punitive damages. Specifically, punitive damages are warranted because Defendants have intentionally made false statements with the goal of preventing Plaintiff from successfully closing on sales of properties at Costa Palmas.

## SECOND CAUSE OF ACTION

### Defamation

### Against All Defendants

78. Plaintiff refers to Paragraphs 1 through 77 above and incorporates the same herein by this reference as though set forth in full.

79. On or about August 23, 2023, Defendants caused to be published numerous false

and defamatory statements about Plaintiff and its business.

80.     Specifically, Defendants told Grit Daily that DLR's Costa Palmas Resort is a "Ponzi scheme."  They also told the outlet that "civil and criminal legal proceedings have been brought or are being initiated against Irongate and its Mexican subsidiaries in Mexico for fraud, racketeering, extortion, conspiracy and other wrongful conduct" and that Anderson's company, GS 1975 LLC, is "working with prosecutors in Mexico to bring criminal charges against Irongate, Mr. Grosfeld, Mr. Waller, and Mr. Radovan, as well as any other remedies that may be available to redress the harm suffered."  A true and correct copy of the article containing Defendants' false and defamatory statements is attached as Exhibit A.  These statements were then republished in numerous other articles, through the efforts of Defendants.

81.     Defendants published the statements to Jordan French.  Mr. French plainly understood the defamatory material to have concerned Plaintiff because he went on to publish a false and defamatory article about "Jason Grosfeld's Costa Palmas Resort," *i.e.*, DLR.

82.     The statements were false at the time of publication.  As to the claim that Costa Palmas is a "Ponzi scheme," the statements were false—and continue to be false—because DLR successfully sells, builds and closes on individual properties to buyers.  Indeed, DLR has successfully closed on over 120 properties at Costa Palmas, ranging from vacant lots to fully furnished condos and single-family residences, and 33 homes in the development have been completed and delivered with numerous others in various stages of active construction.  Any suggestion that funds from property sales are diverted for any improper purpose are baseless.  The statements regarding "criminal legal proceedings" are false because no criminal legal proceedings have been brought.  Similarly, Anderson's claim that he is "working with prosecutors in Mexico to bring criminal charges" is false.  Anderson has filed a baseless complaint in Mexico and no charges have been filed by prosecutors; that does not constitute "working with prosecutors."  In

fact, the registries of Anderson's communications demonstrate that Anderson filed the complaint without ever speaking with Mexican prosecutors.

83.     Third parties could reasonably determine that the statements were clearly about Plaintiff because the articles describing Defendants' statements repeatedly and explicitly refer to the Costa Palmas resort which is being developed by DLR, DLR's legal representative Grosfeld, DLR's affiliate Irongate, and Irongate's "Mexican subsidiaries in Mexico," *i.e.*, DLR.

84.     Through the efforts of 5W PR, these and similar false statements were repeated in numerous other articles, as alleged above.  5W PR has continued the defamatory campaign by, at a minimum, making contact with media outlets falsely stating that DLR is a "Ponzi scheme" and connecting those outlets to Raizada and Anderson so that they can provide further false statements, such as that they are cooperating in criminal investigations regarding DLR.

85.     Defendants' statements are defamatory per se because they claimed that Plaintiff has, inter alia, committed serious crimes, which has a tendency to injure Plaintiff in its business. Specifically, Defendants' statements falsely claimed that DLR is participating in a "Ponzi scheme" a serious criminal endeavor, and that Mexican authorities are investigating DLR for such crimes.

86.     Defendants' false statements are defamatory because they have subjected, and tend to subject, Plaintiff to hatred, distrust, ridicule contempt, and disgrace and call into question Plaintiff's basic integrity.  Again, Defendants' statements falsely claim DLR is participating in a serious criminal enterprise under investigation by Mexican authorities.

87.     Defendants' words are not ambiguous and any reader that came across Mr. French's Daily Grit article (and the many other articles that followed) would understand the articles and their contents to be referring to DLR and Costa Palmas.

88.     Defendants knew the statements were false when publishing the statements and acted with reckless disregard of whether the statements were false because Defendants were

familiar with Plaintiff and the facts surrounding the false claims of criminal prosecution are all personally known to at least Anderson, since it was Anderson who filed a complaint in Mexico and Anderson knows a criminal prosecution is indeed not underway.

89.    Alternatively, Defendants published the statements without reasonable care to determine whether they were actually true or false when Defendants published them because Defendants published them without confirming their accuracy.

90.    Defendants acted with common law malice in publishing the statements because Defendants' sole motive in publishing the statements was to injure Plaintiff.  Defendants' bad faith motives are apparent from the circumstances.  Anderson and Raizada are aggrieved purchasers who contracted with 5W PR specifically to defame DLR.  Anderson attempted to institute baseless criminal proceedings in Mexico against DLR and, when that failed, he and Raizada caused the publication of statements doubling down on false allegations in an effort to cause further harm to Plaintiff.  And Defendants have gone to great lengths to propagate the defamatory statements.

91.    By the actions described herein, Defendants intentionally and with conscious disregard, attempted to strip Plaintiff of its reputation among current and future real estate customers, investors, and contractors and throughout the real estate industry worldwide.  As just one example of the reputational damages caused by Defendants' defamation campaign, DLR and its affiliates have lost out on potential employees who cited the defamatory articles as the reason they elected not to move forward with employment by DLR and its affiliates.

92.    As a proximate result of Defendants' defamation, Plaintiff has lost out on business opportunities and thereby has suffered loss of income and earnings in an amount unknown at this time, but according to proof at the time of trial.

93.    The defamatory meaning of Defendants' publications is apparent on the face of the statements and without the necessity of explanatory matter. As a result of Defendants' publication

of their statements, Plaintiff has suffered general damages in the form of loss of goodwill and loss of customer sales.

94.     Additionally, Plaintiff is entitled to punitive damages as a result of Defendants' conduct. Specifically, Defendants knowingly made false statements and broadcast them to various media outlets with the hope of impugning DLR's reputation.  Given the content of the Publications and other factors, it was, has been, and is reasonably foreseeable to Defendants that the statements would be republished by repetition.  Moreover, Plaintiff has lost—and in the future will continue to lose—out on lucrative business opportunities because of the defamatory remarks.

**THIRD CAUSE OF ACTION**

**Injurious Falsehood**

**Against All Defendants**

95.     Plaintiff refers to Paragraphs 1 through 94 above and incorporates the same herein by this reference as though set forth in full.

96.     On or about August 23, 2023, Defendants caused to be published numerous false statements casting doubt upon the quality of DLR's business and calling it criminal.

97.     Specifically, Anderson told Grit Daily that DLR's Costa Palmas Resort is a "Ponzi scheme."  He also said that "civil and criminal legal proceedings have been brought or are being initiated against Irongate and its Mexican subsidiaries in Mexico for fraud, racketeering, extortion, conspiracy and other wrongful conduct" and that Anderson's company, GS 1975 LLC, is "working with prosecutors in Mexico to bring criminal charges against Irongate, Mr. Grosfeld, Mr. Waller, and Mr. Radovan, as well as any other remedies that may be available to redress the harm suffered."  A true and correct copy of the article containing Defendants' false and defamatory statements is attached as Exhibit A.  These statements were then republished in numerous other articles.

98.     These statements are reasonably understood to cast doubt on the quality of DLR's business.  Defendants' statements repeatedly and explicitly refer to the Costa Palmas resort which is being developed by DLR, DLR's legal representative Grosfeld, DLR's affiliate Irongate, and Irongate's "Mexican subsidiaries in Mexico," *i.e.*, DLR.  Statements that DLR is itself or is operating a "Ponzi scheme" and that DLR is under criminal investigation cast doubt on the quality of DLR's business by indicating that DLR is criminal and untrustworthy.

99.     As previously discussed, the statements were false at the time of publication.  As to the claim that Costa Palmas is a "Ponzi scheme," the statements were false—and continue to be false—because DLR successfully sells, builds and closes on individual properties to buyers.  DLR has successfully closed on over 120 properties at Costa Palmas, ranging from vacant lots to fully furnished condos and single-family residences, and 33 homes in the development have been completed and delivered with numerous others in various stages of active construction.  Any suggestion that funds from property sales are diverted for any improper purpose is baseless.  The statements regarding "criminal legal proceedings" are false because no criminal legal proceedings have been brought.  Similarly, Anderson's claim that he is "working with prosecutors in Mexico to bring criminal charges" is false.  Anderson has filed a baseless complaint in Mexico and no charges have been filed by prosecutors; that does not constitute "working with prosecutors."  In fact, the registries of Anderson's communications demonstrate that Anderson filed the complaint without ever speaking with Mexican prosecutors.

100.    Defendants' words are not ambiguous and any reader that came across Mr. French's article (and the many other articles that followed) would understand the article and its contents to be referring to DLR and its Costa Palmas development.

101.    Defendants knew the statements were false when making them.

102.    Through the efforts of 5W PR, these and similar false statements were repeated in

numerous other articles, as alleged above.  5W PR has continued the defamatory campaign by, at a minimum, making contact with media outlets falsely stating that DLR is a "Ponzi scheme" and connecting those outlets to Raizada and Anderson so that they can provide further false statements, such as that they are cooperating in criminal investigations regarding DLR.

103.    Alternatively, Defendants made the statement with the intent to interfere with DLR's business and desire to do harm to DLR.  Anderson and Raizada are aggrieved purchasers who contracted with 5W PR specifically to defame DLR.  Anderson attempted to institute baseless criminal proceedings in Mexico against DLR and, when that failed, he and Raizada caused the publication of statements doubling down on false allegations in an effort to cause further harm to Plaintiff.  And Defendants have gone to great lengths to propagate the defamatory statements, including attempts to place defamatory statements about DLR in publications specifically relating to the luxury resort industry in which DLR operates.

104.    At a minimum, Defendants made the statements recklessly without regard to the consequences.  A reasonable individual would understand statements asserting a business is a Ponzi Scheme or under criminal investigation would lead to pecuniary harm to that business.

105.    Defendants' false statements were a substantial factor in causing Plaintiff to suffer pecuniary loss.  Customers who had expressed a strong desire to purchase properties from DLR have declined to move forward with their purchases, citing Defendants' false statements.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for entry of judgment in his favor and against Defendants as follows:

(a)    Awarding Plaintiff money damages in accordance with the evidence, together with interest thereon, to compensate Plaintiff for Defendants' tortious conduct, including

for damage to Plaintiff's reputation and economic loss, in an amount to be determined at trial;

(b)     Awarding Plaintiff punitive damages sufficient to punish and deter the conduct complained of hereon in an amount to be determined at trial;

(c)     Awarding Plaintiff's attorneys' fees and cost of suit herein; and

(d)     Granting such other and further relief as the Court may deem just and proper.

Dated: January 4, 2024

/s/ *Elisha Barron* _____
Oleg Elkhunovich (*pro hac vice forthcoming*)
Krysta Kauble Pachman (*pro hac vice forthcoming*)
Tyler D. Downing (*pro hac vice forthcoming*)
SUSMAN GODFREY L.L.P.
1900 Avenue of the Stars, Suite 1400
Los Angeles, California 90067
Telephone: 310-789-3100
Facsimile: 310-789-3150
oelkhunovich@susmangodfrey.com
kpachman@susmangodfrey.com
tdowning@susmangodfrey.com

Elisha Barron (5036850)
SUSMAN GODFREY L.L.P.
1301 Avenue of the Americas, 32nd Floor
New York, New York 10019
Telephone: 212-336-8330
Facsimile: 212-336-8340
ebarron@susmangodfrey.com

***Attorneys for Plaintiff***

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify this 4th day of January 2024, I caused a true and correct copy of the foregoing to be electronically filed with the Clerk of the court using the CM/ECF system which will send notification to the attorneys of record and is available for viewing and downloading.

<u>*/s/ Elisha Barron*                                   </u>
(Signature)